1

2

3

4

5                     UNITED STATES DISTRICT COURT
                      WESTERN DISTRICT OF WASHINGTON
6                            AT SEATTLE

7   BRIAN K. BROWN,

8                         Plaintiff,              CASE NO. C19-5613-MAT

9         v.

10  ANDREW M. SAUL,                               ORDER  RE: SOCIAL SECURITY
    Commissioner of Social Security,             DISABILITY APPEAL
11
                          Defendant.
12

13        Plaintiff proceeds through counsel in his appeal of a final decision of the Commissioner of

14  the Social Security Administration (Commissioner).   The Commissioner denied plaintiff's

15  applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after

16  a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the

17  administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

18                       **FACTS AND PROCEDURAL HISTORY**

19        Plaintiff was born on XXXX, 1963.[1]  He completed the tenth grade and some vocational

20  training, and previously worked as a construction worker I/assistant construction superintendent.

21  (AR 55-56, 101.)

22        Plaintiff protectively filed a DIB application on December 10, 2015 and an SSI application

23
    _____

        [1] Dates of birth must be redacted to the year.  Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

    ORDER
    PAGE - 1

on March 30, 2016, alleging disability beginning September 28, 2013. (AR 288-302.)    The applications were denied at the initial level and on reconsideration.   ALJ Rebecca Jones held two hearings, on October 26, 2017 and May 30, 2018, taking testimony from plaintiff at both hearings and from a vocational expert (VE) at the second hearing.  (AR 41-111.)  On September 6, 2018, the ALJ issued a partially favorable decision, finding plaintiff not disabled prior to April 25, 2018, but disabled as of that date.  (AR 16-35.)

Plaintiff timely appealed.  The Appeals Council denied plaintiff's request for review on May 4, 2019 (AR 1-5), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).  At step one, it must be determined whether the claimant is gainfully employed.  The ALJ found evidence of work activity after the alleged onset date, but not rising to the level substantial gainful activity (SGA). At step two, it must be determined whether a claimant suffers from a severe impairment.  The ALJ found severe:  degenerative disc disease of the lumbar spine, status post laminectomy; right hip femoral acetabular impingement, status post right hip arthroscopy; morbid obesity; major depressive disorder; and generalized anxiety disorder.   Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  The ALJ found plaintiff able to perform less than the full range of light work, with the following limitations:  no climbing ladders, ropes, or scaffolds; occasionally climb ramps or stairs and stoop; no kneeling, crouching, or crawling; avoid exposure to vibration and hazards; perform simple, routine tasks; superficial contact with the public and occasional, superficial interaction with co-workers; and needs a sit/stand alternative, with the ability to change position after thirty or sixty minutes, for three-to-five minutes, while remaining on task.  With that assessment, the ALJ found plaintiff unable to perform any past work.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy.  With the assistance of the VE, the ALJ found plaintiff, prior to April 25, 2018, capable of performing other jobs, such as work as a merchandise marker, inspector hand packager, and office helper.  Beginning April 25, 2018, considering age, education, and work experience, the ALJ found plaintiff disabled with direct application of a Medical-Vocational Rule.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.")  Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of

which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ, for the period prior to April 25, 2018, failed to properly evaluate the medical evidence and his testimony, resulting in errors in the RFC and at step five. He asks the Court to affirm the decision for the period beginning April 25, 2018 and, for the period prior to that date, remand for an award of benefits or, alternatively, further administrative proceedings. The Commissioner argues the ALJ's decision should be affirmed.

<u>Medical Opinions and Evidence</u>

In general, more weight should be given to the opinion of a treating doctor than to a non-treating doctor, and more weight to the opinion of an examining doctor than to a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).[2] Where the record contains contradictory opinions, as in this case, a treating or examining doctor's opinion may not be rejected without "'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

A.      <u>Lee Bourdeau, M.D.</u>

Dr. Lee Bourdeau conducted a Department of Social and Health Services (DSHS) physical functional evaluation on January 28, 2016. (AR 849-53.) He diagnosed low back pain of moderate severity and found plaintiff limited to sedentary work for six months. (AR 850-51.)

The ALJ assigned this opinion little weight, finding the sedentary work limitation inconsistent with the longitudinal medical evidence of record and with plaintiff's demonstrated functioning. (AR 28.) Plaintiff's hip pain had essentially resolved with surgery and records

---

[2] Because plaintiff filed applications prior to March 27, 2017, the regulations set forth in 20 C.F.R. § 404.1527 and § 416.927 apply to the ALJ's consideration of medical opinions.

indicated improvement following back surgery.  (*Id.* (citations omitted).)  Throughout the record, plaintiff described engaging in activities indicating functioning in the light, rather than sedentary exertional range, including the ability to perform household chores and work on cars.  (*Id.* (citations omitted).)  Dr. Bordeau's opinion also appeared in large part based on plaintiff's self-reports, which the ALJ did not find fully consistent with the record or with the objective findings of Dr. Bordeau.  Dr. Bordeau, finally, limited his opinion to six months, inconsistent with the durational requirement for a disability.

The ALJ provided specific and legitimate reasons supported by substantial evidence for the little weight assigned the opinion of Dr. Bordeau.  Those reasons include inconsistency with the medical record, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); inconsistency with plaintiff's activities, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001); the doctor's apparent reliance, in large part, on plaintiff's self-report, which the ALJ did not find fully consistent with the record or with Dr. Bordeau's own findings on examination, *see Tommasetti*, 533 F.3d at 1041 ("An ALJ may reject a treating [or examining] physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible.") (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (ALJ may reject opinion due to discrepancy or contradiction between opinion and physician's own notes or observations); and the assessment of limitations for less than the twelve-month duration required to meet the definition of disability, 42 U.S.C. § 423 (d)(1)(A); 20 C.F.R. §§ 404.1505, .1509; 416.905, .909; *cf. Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming ALJ's finding a treating physicians' short term excuse from work was not indicative of "claimant's long term functioning.")

Contrary to plaintiff's contention, the ALJ's lengthy and detailed discussion of the record

provides ample support for the ALJ's finding of contradictions with both the longitudinal medical evidence and plaintiff's activities.  (*See* AR 22-26.)  The ALJ referred back to and was not required to repeat that discussion in relation to Dr. Bordeau.  *Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004).  *See also Magallanes*, 881 F.2d at 755. ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").  The ALJ also reasonably inferred the doctor's substantial reliance on plaintiff's reporting given the relatively unremarkable findings on examination, notation of plaintiff's "reported" pain, absence of imaging available for review, and the evaluation form's minimal content.  (AR 849-53, 901.)  Finally, while plaintiff asserts there is no evidence he recovered the ability to work after six months, it remains that Dr. Bordeau assessed limitations persisting only six months.  (AR 851.)

B.      Alysa Ruddell, Ph.D.

Dr. Alyssa Ruddell conducted a DSHS psychological evaluation of plaintiff on February 8, 2016.  (AR 854-58.)  She diagnosed chronic pain due to trauma/injury and major depressive disorder.  She assessed, in addition to mild and moderate limitations, marked limitations in adapting to changes and maintaining appropriate behavior, completing a normal work day/week, and setting goals and planning independently.  She assessed overall severity as moderate and equivalent to a global assessment of functioning (GAF) score between "60-51."  (AR 856.)

The ALJ accorded Dr. Ruddell's opinion partial weight.  (AR 30.)  She found the mild to moderate limitations consistent with the record as a whole, plaintiff's demonstrated functioning, and the assessed overall severity/GAF score.  As earlier described, the record demonstrated largely unremarkable mental status examinations (MSE).  (*Id.* (citations omitted).)  When "evaluated in the context of his eligibility for disability benefits, including his evaluation by Dr. Ruddell," plaintiff "still demonstrated functioning consistent with simple, routine tasks, including the ability

to perform a three-step command and perform serial threes." (*Id*. (citations omitted).) The ALJ assigned little weight to the marked limitations assessed because they were not consistent with the longitudinal record and appeared to be based on plaintiff's statements during the "one-time presentation," which was not consistent with the longitudinal record. (*Id*.)

Again, the ALJ reasonably found and had substantial support for the finding of inconsistency with the longitudinal record, as reflected in her earlier lengthy and detailed description of the evidence. (*See* AR 24-26.) Contrary to plaintiff's suggestion, the ALJ was not required to account for every moderate or other limitation assessed by Dr. Ruddell. The "final responsibility" for decision issues such as an individual's RFC "is reserved to the Commissioner." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c). That responsibility includes "translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r, SSA*, 807 F.3d 996, 1006 (9th Cir. 2015). The ALJ here reasonably accounted for mental impairment limitations in considering the evidence from Dr. Ruddell, other medical sources, and the record as a whole. *See generally Turner v. Comm'r of Social Sec. Admin.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (ALJ may incorporate medical opinions by assessing RFC limitations entirely consistent with, but not identical to limitations assessed), and *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (RFC finding need not directly correspond to a specific medical opinion).

The ALJ also reasonably inferred Dr. Ruddell relied in large part on plaintiff's self-report in assessing marked limitations. While noting various findings of impairment on MSE, Dr. Ruddell also noted appropriate appearance, normal attitude, behavior, psychomotor, and social findings, full orientation, adequate fund of knowledge, only slight impairments in memory testing, adequate concentration and attention to detail, including the ability to perform a three-step command, and, overall, found plaintiff only moderately impaired. (*See* AR 856-57.) Nor did the

ALJ err in describing this "one-time" examination. Plaintiff correctly observes that "an ALJ is required to evaluate every medical opinion." (Dkt. 10 at 5.) The ALJ did evaluate Dr. Ruddell's opinion and, in so doing, was entitled to consider the extent of Dr. Ruddell's knowledge of plaintiff and his impairments. *See generally Lester*, 81 F.3d at 830; 20 C.F.R. §§ 404.1527, 416.927.

C.     Loren McCollom, Ph.D.

Dr. Loren McCollum conducted a consultative examination at the request of DSHS and issued a report dated March 8, 2016. (AR 743-51.) Dr. McCollom diagnosed major depressive disorder, recurrent, moderate and generalized anxiety disorder and assessed a GAF of 50, a score describing "serious symptoms" or "any serious impairment in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders at 34 (4th ed. 2000) (DSM-IV-TR). She noted plaintiff performed "quite poorly" on the memory portion of the MSE, the average and low average range on other memory testing, and had mixed results on "Trails A and B" testing. (AR 750.) In the medical source statement, Dr. McCollom stated plaintiff's performance on testing could be considered a good estimation of his actual abilities, that he interacted in a socially appropriate manner, but was quite fatigued by the end of the examination, is withdrawn and socially isolated by choice, maintained attention and concentration with redirection, had limited adaptive capabilities that may benefit from psychotherapy, and appeared able to manage his own finances. (AR 750-51.)

The ALJ stated that, while she considered Dr. McCollom's evaluation, it did not "actually offer a function-by-function opinion" of plaintiff's retained functioning. (AR 29.) She found the evaluation "instructive" as to plaintiff's "ability to interact in a socially appropriate manner and maintain attention and concentration, with only some limits and adaptive abilities." (*Id.*) She also found it to demonstrate functioning consistent with the RFC. The ALJ did not, however, find the

GAF score consistent with the remainder of the evaluation or the longitudinal record:

> As described in detail above, the claimant did not seek mental health treatment until 2016, nearly three years after he alleges the onset of disability. The claimant's counseling records evidence a focus on situational stressors, which would be expected to cause normal stress (e.g. marital issues), rather than symptoms stemming from mental health impairment alone. The claimant's counseling records show [MSEs] are largely unremarkable with the exception of some depressed mood or irritable mood.

(*Id.* (internal citations omitted).) The ALJ concluded the longitudinal treatment record was not consistent with the serious symptoms described in the GAF score. She noted GAF scores are not a uniform measurement of functioning and, rather, represent perceived levels of functioning at a specific time and date. They assess psychological symptoms, physical impairments, *and* socioeconomic factors and therefore do not assess "mental work-related functioning alone." (AR 30.) The ALJ gave the GAF score little weight.

The ALJ accurately noted the absence of specific functional abilities assessed by Dr. McCollom. She rationally interpreted the evaluation as instructive in regard to plaintiff's abilities and consistent with the RFC and its limitations to simple, routine tasks, superficial public contact, and occasional, superficial coworker interactions. Plaintiff, at best, offers an alternative interpretation. *See generally Morgan*, 169 F.3d at 599 ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.")

The ALJ also properly noted the limitations of GAF scores and reasonably construed the assessed GAF as inconsistent with the record. The most recent version of the DSM does not include a GAF rating for assessment of mental disorders. DSM-V at 16-17 (5th ed. 2013). While still considered, a GAF score cannot alone be used to "raise" or "lower" someone's level of function, and, unless the reasons behind the rating and applicable time period are clearly explained,

it does not provide a reliable longitudinal picture of mental functioning for a disability analysis. Administrative Message 13066. A GAF score is a "rough estimate" of an individual's psychological, social, and occupational functioning and is used to assess the need for treatment. *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998). It is not an appropriate methodology for assessing severity or determining RFC.

Finally, and contrary to plaintiff's suggestion, the ALJ properly considered both the long gap in time before plaintiff sought treatment and the focus on situational stressors in treatment as two among a variety of factors considered in assessing Dr. McCollom's opinion. *Flaten v. Sec. of Health & Human Servs.*, 44 F.3d 1453, 1464 (9th Cir. 1995) (ALJ may consider, in assessing medical opinions, the level or frequency of treatment for allegedly disabling conditions over the course of a claimant's history of medical care); 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (ALJ may consider any factor that tends to support or contradict the opinion of a physician).

D.    Other Medical Evidence

Plaintiff describes records that include diagnoses, imaging results, examination findings, and other facts and observations as supporting his testimony of inability to work prior to April 25, 2018. (Dkt. 10 at 6-8.) This portion of plaintiff's brief consists of a mere recitation of evidence and is insufficiently specific to allow for meaningful review as an individual assignment of error. *See Carmickle*, 533 F.3d at 1161 n.2 (declining to address issues not argued with any specificity). The Court does, however, consider the evidence as it relates to other errors alleged.

E.    Opinions of Non-Examining Doctors

The ALJ gave great weight to the opinions of non-examining doctors O.J. Ignacio, M.D., Greg Saue, M.D., and Joanne Coyle, Ph.D., and partial weight to the opinion of non-examining doctor John Robinson, Ph.D. (*See* AR 26-29.) Plaintiff asserts the opinions of these doctors were

entitled to little, if any, weight because they did not review the entire medical record and offered opinions inconsistent with the findings and opinions of his treating and examining doctors.

Non-examining State agency medical and psychological consultants are highly qualified and experts in the evaluation of Social Security disability claims and, while not binding, their opinions must be considered. 20 C.F.R. §§ 404.1513a(b)(1), 416.913(b)(1). *Accord* Social Security Ruling (SSR) 17-2p. Their opinions may constitute substantial evidence when consistent with other independent evidence in the record. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001). *Accord Thomas*, 278 F.3d at 957. "[B]ecause state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

Plaintiff does not identify error. The ALJ is responsible for resolving conflicts in the medical record, *Carmickle*, 533 F.3d at 1164, and when evidence reasonably supports either confirming or reversing the ALJ's decision, the court may not substitute its judgment for that of the ALJ, *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The record supports the ALJ's conclusion the opinions of Drs. Ignacio and Saue were consistent with the record as a whole and with claimant's demonstrated functioning, while additional limitations were warranted based on evidence not available at the time of their review. (AR 27.) Likewise, the record supports the finding of general consistency between the opinion of Dr. Coyle and the record and plaintiff's functioning, but with plaintiff appropriately limited to only simple, routine tasks. (AR 28-29.) The ALJ also reasonably found Dr. Robinson's assessment of only mild limitations in social functioning not consistent with the longitudinal record, which showed plaintiff's description of some social isolation and anxiety and his ability to engage in various social and public activities, and the record to support limits to superficial public contact and occasional, superficial co-worker

interactions.  (AR 29.)

Symptom Testimony

The rejection of a claimant's symptom testimony requires the provision of specific, clear, and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.[3]

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins*, 261 F.3d at 857; SSR 16-3p. An ALJ therefore properly considers whether the medical evidence supports or is consistent with a claimant's allegations. *Id.*; 20 C.F.R. §§ 404.1529(c)(4), 416.1529(c)(4). An ALJ may reject subjective testimony upon finding it contradicted by or inconsistent with the medical record. *Carmickle*, 533 F.3d at 1161; *Tonapetyan*, 242 F.3d at 1148. The ALJ may consider "inconsistencies either in [a claimant's] testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Evidence of activities may undermine a claimant's symptom testimony where they contradict the claimant's testimony *or* meet the threshold for transferable work skills. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). The ALJ also properly considers evidence associated with treatment, §§ 404.1529(c)(3), 416.929(c)(3), SSR

---

[3] Effective March 28, 2016, the SSA eliminated the term "credibility" from its policy and clarified the evaluation of a claimant's subjective symptoms is not an examination of character. SSR 16-3p. The Court continues to cite to relevant case law utilizing the term credibility.

16-3p, including unexplained or inadequately explained failure to seek or follow through with treatment, *Tommasetti*, 533 F.3d at 1039, and evidence of effective treatment or other improvement, *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017), and *Morgan*, 169 F.3d at 599-600.  An ALJ may consider "any other relevant evidence" in a case record, SSR 16-3p, such as evidence reflecting symptoms owing to situational stressors, rather than mental impairments or engagement in work activity.  *See, e.g.*, *Chesler v. Colvin*, No. 13-36098, 2016 U.S. App. LEXIS 8836 at *2 (9th Cir. May 13, 2016) ("First, the record supports the ALJ's conclusion that Chesler's mental health symptoms were situational, and so unlikely to persist once Chesler's circumstances improved. Second, the ALJ found that Chesler's symptom testimony was contradicted by his continual search for work and his ability to work whenever he could find a job.")

The ALJ here described plaintiff's testimony regarding the intensity, persistence, and limiting effects of his symptoms and found them not entirely consistent with the medical and other evidence of record, and a consistent degree of limitation reflected in the RFC assessed.  (AR 22-26, 30-32.)  The ALJ identified inconsistencies with the medical evidence, in plaintiff's own statements, and with evidence of abilities and activities, including statements he made regarding work activity.  The ALJ considered evidence of improvement in physical symptoms with treatment, unexplained failure to seek mental health treatment for a number of years, and evidence of a situational aspect to his reporting when he did engage in treatment.  The ALJ, in so doing, provided specific, clear, and convincing reasons, supported by substantial evidence, for the decision to not accept plaintiff's testimony as to the degree of his impairment.

Plaintiff does not demonstrate error.  The ALJ rationally construed the medical opinion and other medical evidence of record as inconsistent with plaintiff's testimony and indicating improvement with treatment.  She properly relied, in part, on inconsistency with objective medical

findings as one among a number of valid reasons for the conclusion reached. Rather than providing the improperly selective summary of evidence asserted by plaintiff, the Court finds the ALJ's discussion thorough and representative of the record overall. The Court further finds plaintiff's other challenges to the interpretation of this evidence and its significance, or lack thereof, to not undermine the substantial evidence support for the ALJ's at least equally rational interpretation.

The ALJ reasonably construed plaintiff's own statements as inconsistent with his allegations. (AR 26, 31.) The record reflects, for example, plaintiff's reports to his counselor that he was "trying to spend time every day at the garage to earn money" (AR 942); went to an Ethiopian Days event (AR 935); would "collaborate with DSHS/Work Source to get into a vocational program" (AR 931); stated his past employer would hire him back but he "want[ed] to see them go down" (AR 1124); wanted "to work on getting trained to be an inspector for architecture[]" and had "been taking some CASA pre-tests" (AR 1122); and was "planning on doing work on [his] classic car and emptying out stuff at the garage while [his wife was] gone" (AR 1171). The ALJ reasonably construed plaintiff's statements as inconsistent with his testimony of the degree of his impairment, consistent with a greater degree of functioning, and reflecting a belief in his ability to perform some work-related activities. (AR 31.)

The ALJ also reasonably considered evidence of plaintiff's activities and abilities. Plaintiff indicated the ability to prepare simple meals, live alone, remain in contact with his wife who lived out of the country, spend one-to-two hours a day on the internet checking his email, researching things, and engaging in social activities including Facebook, perform usual housekeeping chores, and complete job applications, although his "interviews went badly because of his physical problems." (AR 25 (citations omitted).) The record showed his ability to engage in social activities, including spending time with friends and family, and engage in activities in public. (AR

29 (citations omitted).) The record reflected activities "more robust than one would expect" given the alleged severity of symptoms. (AR 31.) Plaintiff testified he stopped riding a Harley Davidson motorcycle in 2016, three years after the alleged onset date, an activity which necessarily required gross and fine motor skills, vibration, and the ability to steady and balance a large amount of weight. (AR 31-32.) He sometimes mowed his neighbor's lawn for spending money, changed the brakes on his vehicle, traveled back and forth to Ethiopia several times, enduring twenty-three-hour plane rides, and reported working at a garage. While plaintiff testified "he was just hanging around his friend's garage, the treatment record makes clear that the claimant was doing work at a garage for money." (AR 32 (citing AR 942 (claimant "reported, 'I am trying to spend time every day at the garage to earn money, but that impacts [my wife] trusting me because she questions what I am doing'" and "'Money is more important at this time and [my wife] will just have to deal with me not being at home'"))[4] Plaintiff's attempt to minimize and qualify specific pieces of evidence cited to by the ALJ does not undermine the substantial evidence support for the conclusion the evidence of plaintiff's activities and abilities is inconsistent with the alleged degree of impairment and suggests greater ability to function.

The ALJ also reasonably considered other evidence associated with plaintiff's mental health impairments and treatment. Plaintiff does not point to evidence in the record suggesting a different explanation for the absence of mental health treatment until three years after the alleged onset date. Nor does plaintiff show the ALJ unreasonably construed his counseling records as

---

[4] Numerous other documents in the record provide support the ALJ's conclusion. (*See, e.g.*, AR 938 ("'Financially we are still strapped. The garage has been really busy and picking up but not fast enough.'"); AR 956 ("'I am going to keep working to get money[.]'"); AR 1140-41 ("'This week is going to be really stressful coming up because I have a lot of jobs coming up.'"); AR 1172 ("'I finally got paid the rest for the car I was working on but I had to send a bunch of money to Ethiopia.'")) *See also Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006) (citation to additional evidence does not constitute an improper post hoc rationalization where offered not "to invent a new ground of decision[,]" but to provide "additional support for the Commissioner's and the ALJ's position.")

"largely focused on situational stressors that would be expected to cause normal stress, rather than symptoms stemming from mental health impairments alone." (AR 24; *see also* AR 26 (noting reports of "stressors in his home life", "marital strain", numerous reports of "financial stress", "increased stress related to his wife's health", decreased financial stress "because he had completed work on a car", and "stressors surrounding his family life in his wife's health").) The ALJ therefore properly considered plaintiff's symptom testimony.

### RFC and Step Five

Plaintiff asserts error in the RFC and decision at step five based on the alleged errors in the consideration of medical opinions, other medical evidence, and his symptom testimony. Because the Court finds no such errors, this restating of arguments does not establish error at steps four or five. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

### **CONCLUSION**

For the reasons set forth above, this matter is AFFIRMED.

DATED this <u>13th</u> day of April, 2020.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 16